IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**DARILYN R. GEISTER**,                                   Civil Case No. 09-347-KI

            Plaintiff,

                                    OPINION AND ORDER

   vs.

**MICHAEL J. ASTRUE**,
Commissioner of Social Security,

            Defendant.


      Kimberly K. Tucker
      Swanson, Thomas & Coon
      820 SW Second Avenue, Suite 200
      Portland, Oregon  97204

          Attorney for Plaintiff

      Dwight C. Holton
      United States Attorney
      District of Oregon

Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902

David J. Burdett
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Darilyn Geister brings this action pursuant to section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB").  I affirm

the decision of the Commissioner.

## BACKGROUND

Plaintiff filed an application for DIB on May 19, 2004, alleging disability beginning

October 8, 2003.  The application was denied initially and upon reconsideration.  After a timely

request for a hearing, plaintiff, represented by counsel, appeared and testified before an

Administrative Law Judge ("ALJ") on March 13, 2007.

On June 29, 2007, the ALJ issued a decision finding that plaintiff was disabled as of

November 1, 2006, but not before.  This decision became the final decision of the Commissioner

when the Appeals Council declined to review the decision of the ALJ on February 11, 2009.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity ("SGA") by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the

claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than

a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences

reasonably drawn from the record, and if evidence exists to support more than one rational

interpretation, we must defer to the Commissioner's decision."  Batson v. Comm'r of Soc. Sec.

Admin., 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found plaintiff had performed SGA from November 2005 to October 2006.  To

be thorough, the ALJ completed the analysis on the remaining four steps.  Accordingly, the ALJ

concluded plaintiff had severe impairments of coronary artery disease, hypertension, history of

bilateral carpal tunnel syndrome and surgical releases, avascular necrosis of the right wrist,

urinary incontinence, obesity, and depression.  The ALJ also found that these impairments, either

singly or in combination, were not severe enough to meet or medically equal the requirements of

any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.

After reviewing the medical record, the ALJ concluded plaintiff had the residual

functional capacity ("RFC") from October 8, 2003 to November 1, 2006, to lift ten pounds

occasionally, stand and walk two hours out of an eight-hour workday and sit for six hours out of

an eight-hour workday.  Based on this RFC, the ALJ concluded plaintiff could not perform her

past relevant work but could perform the full range of sedentary work, such as food and beverage

order clerk, circuit board assembler, and optical goods assembler.

After November 1, 2006, the ALJ found plaintiff's symptoms had worsened, particularly

with respect to her cardiac condition.  She found that plaintiff's RFC since November 1, 2006

had changed to lifting ten pounds occasionally, standing and walking one hour in an eight hour

day, and sitting five hours in an eight hour day, with a sit/stand option.  Given this RFC, and the

ALJ's finding that plaintiff was incapable of sustained work given her symptoms, the ALJ

concluded a finding of disability was justified.

### FACTS

Plaintiff, born in May of 1959, was 44 at the time of the ALJ's decision.  She has a high

school degree and has completed some college courses.  She has worked as an apartment

property manager, a kitchen helper, a home health aide, and a house cleaner.

In October 2003, she was hospitalized for what was believed to be a suicide attempt.  It

was later reported that the overdose appeared to be an attention-seeking gesture.  She reported in

May 2004 that she had stopped taking anti-depressants.  She has struggled with depression on

and off over the years.  She began taking Paxil for depression in January 2005 and reported doing

well in February 2005.  She denied depression in March 2005.  Katherine Johnson, M.D.,

referred her to mental health counseling in January of 2006, which plaintiff never obtained.

In March 2004, plaintiff was hospitalized with chest pain.  She was diagnosed with

coronary artery disease and had angioplasty with stent placement.  By June 2004, she had

improved and experienced exertional angina only occasionally.  In August 2004, her coronary

artery disease was deemed stable.  Plaintiff's occasional chest pressure was helped with

nitroglycerin in June 2005.  Plaintiff had no hospital admissions for chest pain until December

2006, at which time she reported rib and chest pain.  She described cramping and pressure

around her heart in January 2007, along with nausea and shortness of breath.  James P. Borden,

M.D., concluded plaintiff was "clearly incapacitated from her chest pains" at that time.  Tr. 312.

She has been diagnosed with urge and stress incontinence, while coughing and sneezing,

and has a history of wrist pain that has been diagnosed as Kienbock disease.  Dr. Johnson

referred plaintiff to a hand surgeon for her wrist pain. She was given Percocet for pain. In

January 2007, however, plaintiff reported no wrist pain. She testified at the hearing that she

could lift ten pounds occasionally.

     Plaintiff is obese, with a height of 61 inches and a weight of 190 pounds and she smokes.

**DISCUSSION**

I.    Substantial Gainful Activity

     The ALJ noted plaintiff's report that she had worked from November 2005 through

October 2006 as an on-call prep cook. Her husband and supervisor, John Gilles, hired her to fill

in when his regular employees called in sick. She worked approximately 20 hours a week. The

ALJ examined whether plaintiff was operating under special conditions while completing this

work, such as working on an irregular schedule, taking frequent breaks, or working pursuant to

other accommodations as set forth in 20 C.F.R. § 404.1573(c)(1)-(4).

     Plaintiff testified that she filled in wherever she was needed, with the same duties as the

other employees, although she did not lift anything over five pounds. She testified that when her

husband left their employer, her job ended. The ALJ characterized this testimony as evidence

that the work constituted SGA.

     At the hearing, the ALJ asked plaintiff's attorney to obtain a statement from plaintiff's

husband about plaintiff's work conditions. Gilles submitted a letter explaining that plaintiff

could take breaks from five to 15 minutes every hour, which was more than the company usually

allowed. He also testified that another supervisor would not have tolerated the frequent breaks.

The ALJ characterized the statement as evidence that the work was not SGA. The ALJ then

accepted plaintiff's description of her job over Gilles' description, concluding that plaintiff was

Page 7 - OPINION AND ORDER

"more familiar with what she was doing than her husband," and considered the work to be SGA. Tr. 24.

Plaintiff's testimony, however, is not contradicted by her husband's statement. Plaintiff testified that she worked in her "husband's kitchen for about 10, 11 months or something. And he was the boss, and <u>so I could take care of what I needed to take care of, as long as I could get some work done.</u> And it was usually just clean and chop food." Tr. 639 (emphasis added). She explained that she was able to take care of her needs whether she had a break coming or not.

Accordingly, the ALJ's conclusion that plaintiff's work was SGA is not supported by substantial evidence in the record, but the error is harmless. The evidence reflects that plaintiff "received special assistance from other employees[,]" was "allowed to work irregular hours or take frequent rest periods[,]" was "permitted to work at a lower standard of productivity or efficiency than other employees[,]" and was "given the opportunity to work despite [her] impairment because of family relationship[.]" 20 C.F.R. § 404.1573(c) (1), (2), (5), and (6). Plaintiff's testimony and the statement of her husband directly refute the ALJ's conclusion.

The ALJ nevertheless went on to evaluate plaintiff's impairments and functional limitations since the job lasted for less than a year. Accordingly, the ALJ's error is harmless. <u>See</u> <u>Johnson v. Shahala</u>, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995) (error is harmless when the correction of that error would not alter the result).

Plaintiff argues the error is not harmless, suggesting that the ALJ's decision was effectively concluded after deciding the claim at step one, rendering her decision on the remaining steps "irrelevant." Pl.'s Reply at 2. Contrary to plaintiff's argument, however, the ALJ specifically determined that she would proceed to the other steps "to be thorough[.]" Tr. 24.

Page 8 - OPINION AND ORDER

Neither the statute nor the regulations preclude the ALJ's resolution of a case using alternative findings, and such decisions serve to maximize judicial efficiency.   The error might be material if the ALJ relied solely on plaintiff's ability to engage in SGA in evaluating plaintiff's credibility and functional limitations, but she did not.  Accordingly, the ALJ's error in considering plaintiff's work to be SGA is harmless.

II.    Residual Functional Capacity

Plaintiff takes issue with the ALJ's conclusion that she suddenly became disabled as of November 1, 2006 when her coronary artery disease was diagnosed in 2004, her incontinence has been an issue since 2005, she has been complaining about her right wrist impairment since September 2005, and she has suffered from depression since 2003.

Plaintiff does not challenge the ALJ's evaluation of her credibility.  The ALJ looked at the whole record and determined that plaintiff was seeking work in 2003 and 2004, after her alleged onset date of disability, worked as a kitchen helper (even if not at SGA level) from October 2005 through November 2006 (and was not truthful about this work when reporting to her examining physician Dr. Borden), was inconsistent in complying with medical advice, and maintained a level of activity that was irreconcilable with disability.  The ALJ also considered the medical evidence regarding her chest pain.  Although plaintiff was hospitalized in March 2004 due to her chest pain, she reported improvement and her test results reflected improvement throughout 2004, 2005 and 2006.

The ALJ evaluated the medical record and concluded that plaintiff's condition "significantly worsened" from November 1, 2006.  She referred to plaintiff's emergency treatment of heart pain in December 2006, plaintiff's description of heart cramping in January

2007, and a January 29, 2007 opinion from Dr. Borden that plaintiff was "clearly incapacitated from her chest pains." Tr. 312.  The ALJ gave great weight to Dr. Borden's January 2007 opinion.  Tr. 30.  As a result, the hypothetical questions the ALJ posed to the VE specified all of the limitations and restrictions of plaintiff for the period at issue.  Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001).  Substantial evidence supports the ALJ's conclusion that plaintiff was disabled after November 1, 2006, but not before.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards.  For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this _____20th_____ day of July, 2010.


   __/s/ Garr M. King_____
   Garr M. King
   United States District Judge